STATE *vs.* WAYLAND R. SMYTH.

Pub. Stat. R. I. cap. 127, § 5, as amended by Pub. Laws R. I. cap. 276, § 1, of March 23, 1882, provide:

"No person shall sell or exchange, or have in his possession with intent to sell or exchange, or offer for sale or exchange, adulterated milk or milk to which any foreign substance has been added."

Pub. Laws R. I. cap. 276, § 3, of March 23, 1882, provide:

"In all prosecutions under this act, if the milk shall be shown upon analysis to contain more than *eighty eight per centum* of watery fluids, or to contain less than twelve *per centum* of milk solids, or less than two and one half *per centum* of milk fats, it shall be deemed for the purpose of this act to be adulterated."

*Held,* that § 3 above recited did not establish a rule of evidence, but defined a new offence.

*Held,* further, that the offence lay in the intent to sell or exchange such milk, not in possessing it.

*Held,* further, that § 3 above recited was constitutional and valid.

CONSTITUTIONAL questions certified to the Supreme Court under Pub. Stat. R. I. cap. 220, §§ 1–9.

*February* 10, 1883. MATTESON, J. This is a complaint which charges in substance that the defendant, at Providence, on the 6th day of July, A. D. 1882, did have in his possession adulterated milk, to wit, milk which contained more than eighty eight per cent. of watery fluids, and less than twelve per cent. of milk solids, and less than two and one half per cent. of milk fats, as shown by analysis of said milk, with intent then and there to sell the same against the statute, &c.

Pub. Stat. R. I. cap. 127, § 5, as amended by Pub. Laws R. I. cap. 276, § 1, of March 23, 1882, read as follows:

"No person shall sell or exchange, or have in his possession with intent to sell or exchange, or offer for sale or exchange, adulterated milk or milk to which water or any foreign substance has been added."

Pub. Laws R. I. cap. 276, § 3, of March 23, 1882, is as follows:

"In all prosecutions under this act, if the milk shall be shown upon analysis to contain more than eighty eight *per centum* of watery fluids, or to contain less than twelve *per centum* of milk solids, or less than two and one half *per centum* of milk fats, it shall be deemed for the purpose of this act to be adulterated."

At the trial in the Justice Court, the defendant moved to quash the complaint, because section third of the statute quoted above

is unconstitutional. The court overruled the motion, and, the defendant offering no testimony, convicted him, and certified the case to this court for a decision upon the constitutional question raised.

The defendant contends that the section is unconstitutional because, as he alleges, it establishes a rule of evidence and makes it conclusive of the guilt of the accused. We do not take this view of the section. It does not establish a rule of evidence, but creates, or rather defines, an offence. It was the purpose of the statute to prohibit, not only the dealing in milk which had been adulterated, but also in milk of such inferior quality as to fall below the standard named in section third. It is equally a fraud on the buyer, whether the milk which he buys was originally good and has been deteriorated by the addition of water, or whether in its natural state it is so poor that it contains the same proportion of water as that which has been adulterated.

Again, since it may sometimes happen, though we presume infrequently, that milk as it comes from the cow is below the standard of quality required by section third, it would manifestly be difficult for the prosecution to prove that its poor quality was due to adulteration, although in a very large majority of cases such would probably be the fact. By putting such milk in the same category with adulterated milk, the prosecution is relieved from the difficulty, and a loophole for the escape of offenders is closed.

The offence consists not in the possession of milk containing more than eighty-eight per cent. of watery fluids, or less than twelve per cent. of milk solids, or less than two and one half per cent. of milk fats, but in the *intent* to sell or exchange such milk, &c. The defendant is at liberty to adduce any facts which tend to rebut the charge of such intent, and it is incumbent on the prosecutor to prove such charge beyond reasonable doubt.

The defendant further contends that section third is unconstitutional, because it is unequal and partial in its operation, in this, that it discriminates, as he claims, in favor of the owners of cows which give rich pure milk, against the owners of cows which give milk of inferior quality, enhancing the value of the former at the expense of the latter. The defendant does not point out to us how the section has this effect, and we fail to perceive that it

does.  If a cow habitually gives milk of a quality so poor as to come within the statute, or, as the defendant puts it in his brief, so poor that as a commercial commodity it is valuable only for the purposes of irrigation, she is of no value as a milk producer, and can have none as such to her owner, unless he can sell her milk to his unsuspecting neighbors for a price greatly in excess of ·its value, a species of fraud which ought not to be tolerated.  The section is but a slight extension of the provision which prohibits the sale of adulterated milk, and, like that, was designed to protect the public against imposition.  We think it is a valid exercise by the legislature of the police power incident to the State. A similar section in the statute of Massachusetts, Stat. 1880, cap. 209, § 7, was held to be constitutional in *Commonwealth* v. *Evans*, 132 Mass. 11, 12.

The case is remanded to the Justice Court of Providence for sentence.                                    *Order accordingly.*